UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALLACE ALFRED ZIMMERMAN,<br><br>Petitioner,<br><br>v.<br><br>PHIL MORGAN, Warden, and JOSEPH R. BIDEN, III, Attorney General for the State of Delaware,<br><br>Respondents. | Civil Action No. 10-219(JAP)<br><br>**OPINION** |

**PISANO, District Judge**

Presently before the Court is a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Wallace Alfred Zimmerman ("Petitioner"). (D.I. 1.) Petitioner was incarcerated in the Howard R. Young Correctional Institution in Wilmington, Delaware when he filed the Petition.[1] The State answered the Petition, asking the Court to deny the Petition in its entirety because the claims raised therein are meritless. (D.I. 14.) Upon independent and thorough review, and for the reasons stated below, the Court will deny the Petition without an evidentiary hearing.

## I. BACKGROUND[2]

Around 7:30 p.m. on October 14, 2008, Petitioner secured an extension ladder to the roof

---

[1] Although Petitioner was released from incarceration in October 2010 to serve the probationary portion of his sentence, (D.I. 17), "in custody" requirement of § 2254 is still satisfied because Petitioner was incarcerated when he filed the Petition. *See Spencer v. Kemna*, 523 U.S. 1, 7.

[2] The facts are recited from the Delaware Supreme Court's decision affirming Petitioner's convictions and sentences. *Zimmerman v. State*, 991 A.2d 19 (Table), 2010 WL 546971, at *1-2 (Del. Feb. 16, 2010).

of his Jeep Cherokee, which was parked in front of his house on West Salisbury Drive, Edgemoor Terrace, Wilmington, Delaware. He then drove up to the intersection of Rodney Drive and Rysing Drive, in nearby Edgemoor Gardens, parked his Jeep and entered the residence of Kucharski, which was located on Rodney Drive. Just before midnight, Petitioner and Kucharski exited the residence and got into the Jeep. Petitioner drove to a business park at the corner of Rogers Road and South Heald Street south of Wilmington. There, using Petitioner's ladder, one of the men cut copper wire from an electric utility pole in the rear of two fo the addresses in the business park, located at 103 and 105 Rogers Road. Both men placed the ladder back on the roof of the Jeep, loaded the copper wire into the rear of the vehicle, and drove away.

Members of the Wilmington Police Department, who had been conducting surveillance on Petitioner and Kucharski the entire evening, stopped the Jeep on East Avenue in Holloway Terrace, near New Castle Avenue. In the rear of the Jeep, the police discovered a large amount of copper wire and several tools, including a set of bolt cutters, a reciprocating saw, blades, pliers, screwdrivers, and a headlamp. A Delmarva Power investigator later determined that approximately 150 feet of large gauge copper wire had been removed from behind 103 and 105 Rogers Road in the incident. He estimated that the replacement cost to the power company would exceed $1,000 for the wire and $2,300 for the labor.

Petitioner was arrested and subsequently charged with felony theft, second degree conspiracy, felony criminal mischief, possession of burglary tools, and third degree criminal trespass. Petitioner's jury trial in the Delaware Superior Court was scheduled for March 2009; by the start of the trial, Petitioner's former co-defendant, Albert Kucharski, had pled guilty and had been sentenced. Prior to entering his plea, Kucharski had given a recorded statement to the

police in which he implicated Petitioner in the crimes.

On the first morning of trial, defense counsel informed the trial judge that Petitioner had directed her to call Kucharski as a witness in his behalf. Defense counsel then explained that she could not call Kucharski to testify because she believed Kucharski was planning to perjure himself by altering his story to help Petitioner, and that she had discussed this concern with Petitioner. The judge agreed with defense counsel's decision and ruled that counsel could not sponsor Kucharski as a witness. The judge then gave Petitioner the choice of continuing with his trial represented by his counsel or proceeding *pro se*. Petitioner chose to continue the trial represented by his counsel. The judge then explained that the decision as to which witnesses to call was a matter of trial strategy for counsel, not the client.

Later, after a recess for lunch, defense counsel again approached the judge and stated that Petitioner still wanted Kucharski to be called as a witness. Petitioner asked if he could question Kucharski if his counsel did not want to do so. The judge explained that a trial does not work that way, and then asked the prosecutor if he had anything to add to the discussion. The prosecutor informed the trial judge that he had decided not to call Kucharski as a witness for the State because Kucharski had changed his position since giving his statement to the police. Defense counsel added that she had concerns about Kucharski's ability to stand up under cross examination, given the discrepancy between his prior statement and his intended testimony. The trial judge reiterated her ruling that Kucharski would not be permitted to testify.

Petitioner testified in his own behalf. His testimony was that he did not know Kucharski intended to steal the copper wire and that he did not intend to commit a crime or to use his tools to commit a crime.

The jury found Petitioner guilty on all counts of the indictment. On May 1, 2009, he was sentenced to an aggregate of five years in prison, suspended after two years for one year of probation. Petitioner, acting *pro se*, appealed. The Delaware Supreme Court affirmed Petitioner's convictions and sentence.

On or about March 17, 2010, Petitioner timely filed this Petition. The State filed an Answer asking the Court to deny the Petition in its entirety for being meritless.

## II.  GOVERNING LEGAL PRINCIPLES

A.  <u>The Antiterrorism and Effective Death Penalty Act of 1996</u>

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

B.  <u>Exhaustion and Procedural Default</u>

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

C. Standard of Review Under AEDPA

If a state's highest court adjudicated the petitioner's federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). In determining whether the Federal law is "clearly established," the focus is on Supreme Court holdings, rather than dicta, that were clearly established at the time of the pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (2010).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

### III. DISCUSSION

Petitioner asserts the following grounds for relief:[3] (1) trial counsel provided ineffective assistance by refusing to call Kucharski to testify for the defense; (2) the trial court should have appointed new counsel when defense counsel refused to call Kucharski as a witness; and (3) the trial court violated Petitioner's rights to a fair trial and to compulsory process by refusing to call Kucharski to testify. Petitioner presented these same claims to the Delaware Supreme Court in his direct appeal, and the State Supreme Court denied them as meritless. Accordingly, the Court

---

[3]For ease of analysis, the Court has renumbered the claims in the Petition and has combined Claims Two and Three of the Petition into one claim, Claim Three.

can only grant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law, or involved an unreasonable determination of facts based on the evidence presented at trial. *See* 28 U.S.C.§ 2254(d). The Court will review the claims in seriatim.

A. Claim One: Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In Claim One, Petitioner contends that counsel provided ineffective assistance because she refused to call Kucharski as a witness for the defense. Petitioner presented Claim One to the

Delaware Supreme Court in his direct appeal and, citing *Strickland*, the Delaware Supreme Court denied it as meritless. Therefore, the Delaware Supreme Court's decision is not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied *Strickland* in denying Claim One. In performing this inquiry, the Court turns to the well-settled doctrine that an attorney's duty to zealously represent a client is circumscribed by an "equally solemn duty to comply with the law and standards of professional conduct . . . to prevent and disclose frauds on the court." *Nix v. Whiteside*, 475 U.S. 157, 168-69 (1986). In other words, "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Id.* at 166.

Here, both the trial court and the Delaware Supreme Court found that counsel reasonably believed Kucharski intended to commit perjury. Petitioner has not provided clear and convincing evidence to rebut the presumption of correctness that has attached to the this factual finding of the Delaware State Courts. As a result, the Court accepts as correct the State Courts' conclusion regarding Kucharski intent to commit perjury. The Court also notes that the trial transcript affirmatively supports defense counsel's belief that Kucharski intended to provide perjurious testimony.[4] And, significantly, as noted by the trial court, aside from defense counsel's perjury

---

[4]For instance, when telling the trial judge why she would not call Kucharski as a witness, defense counsel explained that there was a discrepancy between the testimony Kucharski intended to provide at trial and the videotaped statement he originally provided to the police. In

concerns, counsel also had "trial strategy issues that ha[d] to do with whether Mr. Kucharski c[ould] stand up to cross-examination, particularly in light of a recorded statement which would [have been entered] into evidence for purposes of impeachment, in all likelihood." (D.I. 16, App. for Op. Br. in *Zimmerman v. State*, No. 317,2009, 3/3/2009 Trial Transcript at 30.) In short, counsel's refusal to call Kucharski as a witness was motivated by her duty to comply with her legal and professional responsibilities as well as her strategic concerns. Thus, after considering the Delaware Courts' factual findings and counsel's legitimate strategic concerns, the Court concludes Delaware Supreme Court reasonably applied *Strickland* in finding that counsel's refusal to call Kucharski as a witness did not amount to deficient performance.

The Court also concludes that Petitioner cannot satisfy the prejudice prong of *Strickland*. A defendant does not have a constitutional right to have his attorney present evidence that the attorney believes is false and,[5] given the "overriding interest in fundamental fairness," "the likelihood of a different outcome" brought about by a witness' perjury should not be regarded as "legitimate" *Strickland* prejudice. *See Williams v. Taylor*, 529 U.S. 362, 392 (2000). Moreover, the record reveals that defense counsel aggressively cross-examined the State's witnesses, highlighting the lack of forensic evidence, gaps in police surveillance, police inability to

---

the videotape, Kucharski told police that both he and Petitioner had intended to steal the copper wire from the beginning, but, prior to trial, Kucharski told defense counsel that he intended to testify that Petitioner did not know about the plan to steal the copper wire. The prosecutor also informed the trial judge that the State would not be calling Kucharski as a witness because he was concerned that Kucharski intended to provide an altered version of events if he testified at trial. And, Petitioner even conceded that he could not assure the trial court that Kucharski's testimony would not be perjured. (D.I. 16, App. for Op. Br. in *Zimmerman v. State*, No. 317, 2009, 3/3/2009 Trial Transcript at 15-17, 23-30.)

[5]*See Nix*, 475 U.S. at 171.

positively identify the two men in the parking lot, the innocuousness of the tools found in the truck, and the inability of the police to hear any conversations between Petitioner and Kucharski that might establish their relative levels of intent. At the close of the State's case-in-chief, defense counsel moved for judgment of acquittal, arguing that the State had failed to prove Petitioner's intent to commit the charged offenses or a felony amount of damage regarding the criminal mischief and theft charges. During her closing argument, counsel zealously argued Petitioner's lack of intent as well as the State's inability to prove intent, and even highlighted the State's failure to call Kucharski as a witness to support the State's theory that Petitioner and Kucharski conspired together. In short, defense counsel zealously advocated for her client within the bounds of her professional ethical obligations, and her failure to call Kucharski as a defense witness did not render the trial unfair or the result unreliable.

Based on this record, the Court concludes that Petitioner's claim of ineffective assistance of counsel does not warrant relief under § 2254(d)(1) or (2).

B. <u>Claim Two: Trial Court's Failure to Appoint New Counsel</u>

In Claim Two, Petitioner contends that the trial court erred by not appointing new counsel on the day of trial after defense counsel refused to call Kucharski as a defense witness. Petitioner raised this same argument on direct appeal, and the Delaware Supreme Court rejected it as meritless. The Delaware Supreme Court explained that a trial court could not dismiss court-appointed counsel without good cause, and that, absent good-cause for such dismissal, a defendant must either proceed with court appointed counsel or proceed *pro se*. *Zimmerman*, 2010 WL 546971, at *2. The Delaware Supreme Court then held that the "transcript [] reflects that the Superior Court dealt appropriately with [Petitioner's] request for new counsel and acted

entirely within its discretion and fully in accordance with the rules of ethics when it ruled that [Petitioner] was not entitled to the appointment of new counsel." *Zimmerman*, 2010 WL 546971, at *2-3.

It is well-settled that a defendant's Sixth Amendment "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *see Wheat v. United States*, 486 U.S. 153, 159 (1988)("the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers."). Consequently, a "last minute request for substitution of counsel . . . need not be granted unless 'good cause' is shown for the defendant's dissatisfaction with his current attorney." *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). "Good cause" is defined as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *Id*.

Here, although the Delaware Supreme Court did not specifically apply United States Supreme Court precedent and its progeny in holding that the trial court properly refused to appoint new counsel, the Delaware cases cited by the Delaware Supreme Court refer to the applicable precedent and properly articulate the parameters of a defendant's right to substitution of counsel. Therefore, the Court concludes that the Delaware Supreme Court's decision was not contrary to clearly established Federal law. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The Court further concludes that the Delaware Supreme Court's decision involved a reasonable application of Supreme Court precedent to Petitioner's case, because defense counsel's refusal to call Kucharski as a defense witness does not fit within any of the three definitions of "good cause." For instance, to the extent counsel's refusal to call Kucharski as a witness was motivated by counsel's reasonable concern that Kucharski intended to commit perjury, the decision did not create the type of "conflict of interest" warranting counsel's immediate disqualification. *See Nix*, 475 U.S. at 176. As explained by the Supreme Court,"[i]f a 'conflict between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means." *Id*. at 176.

Second, Petitioner does not allege, and the Court does not discern, that there was a complete breakdown of communication. On the contrary, the record reveals that counsel met with Petitioner on several different occasions to discuss her trial strategy.

And finally, it is well-settled that deciding which witnesses to call is a matter of trial strategy for a defense attorney to determine, and a disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel. *Goldberg,* 67 F.3d at 1098-99*; United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999). In other words, although a defendant has a right to counsel without conflict of interest, a defendant does not have a right to counsel who will not disagree with him on trial strategy. *See Wheat*, 486 U.S. at 160. Here, counsel's decision not to call Kucharski as a witness was motivated by counsel's reasonable concern that Kucharski intended to commit perjury and that

he would not fare well on cross-examination due to his conflicting stories.  Accordingly, the fact that Petitioner disagreed with counsel's tactical assessment of Kucharski's ability to aid the defense did not amount to an "irreconcilable difference" warranting the appointment of counsel.

In short, having been presented with nothing more than Petitioner's dissatisfaction with counsel's strategic decision not to call Kucharski to testify, the trial court properly refused to appoint new counsel. *See United States v. Moses,* 58 F. App'x. 549, 555 (3d Cir. 2003). Accordingly, the Court will deny Claim Two Court because the Delaware Supreme Court's decision was based on a reasonable determination of facts and involved a reasonable application of Supreme Court precedent.

C. Claim Three: Exclusion of Witness Violated Petitioner's Right to a Fair Trial and his Right to Compulsory Process

In Claim Three, Petitioner argues that the trial court violated his right to compulsory process by refusing to call Kucharski as a witness, and that the exclusion of Kucharski's testimony deprived him of a fair trial.  Petitioner presented this argument to the Delaware Supreme Court on direct appeal.  Although the Delaware Supreme Court did not expressly address this argument, the State Supreme Court adjudicated the claim for § 2254(d) purposes when it concluded that "all of [Petitioner's] claims are without merit." *Zimmerman*, 2010 WL 546971, at *3.  Therefore, the Court can only grant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, Supreme Court precedent.

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S.

13

Const. amend. VI. As explained by the Supreme Court,

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967). However,

> [t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly.

*Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

In turn, although "a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor,"

> the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id*. at 414-15.

To begin, given the Court's acceptance of the uncontested factual finding that defense counsel reasonably believed Kucharski intended to commit perjury, the Court concludes that the trial judge reasonably held that she could not force defense counsel to sponsor Kucharski as a witness. In turn, once Petitioner elected to continue with defense counsel despite counsel's refusal to call Kucharski as a witness, the trial judge reasonably refused to interfere with defense

14

counsel's decision as to whether to call a particular witness, because counsel had the authority to manage the tactical decisions regarding the presentation of Petitioner's defense. *See New York v. Hill*, 528 U.S. 110, 115 (2000); *see also Strickland*, 466 U.S. at 689 (expressing Supreme Court's hesitance to "interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."). And finally, given this Court's earlier conclusion that counsel did not provide ineffective assistance by not calling Kucharski as a witness, Petitioner simply cannot establish that the trial court's failure to compel Kucharski's appearance as a witness violated his Sixth Amendment right to compulsory process or that this failure deprived him of a fair trial. Accordingly, the Court concludes that the Delaware Supreme Court's denial of Claim Three was neither contrary to, nor an unreasonable application of, clearly established Federal law.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Reasonable jurists would not find this conclusion to be debatable. Consequently, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing. An appropriate Order shall issue.

 /s/ JOEL A. PISANO
JOEL A. PISANO
United States District Judge

DATED: April 26, 2011